# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **BOLD HOME PRODUCTS, LLC** | \* **CASE NO.**    **2:20-cv-04020** |
| **2231 NW Broad Street** | \* |
| **Murfreesboro, TN 37129** | \* **Judge** |
| | \* |
| **-and-** | \* |
| | \* **COMPLAINT FOR DAMAGES AND** |
| **E-COMMERCE TRADE, LLC** | \* **INJUNCTIVE RELIEF** |
| **2231 NW Broad Street** | \* |
| **Murfreesboro, TN 37129** | \* **(JURY DEMAND ENDORSED HEREON)** |
| | \* |
| *Plaintiffs,* | \* |
| | \* |
| **v.** | \* |
| | \* |
| **CARBONKLEAN, LLC** | \* |
| **24 Village Pointe Drive** | \* |
| **Powell, OH 43065** | \* |
| | \* |
| **-and-** | \* |
| | \* |
| **DANIEL J. PATTON** | \* |
| **24 Village Pointe Drive** | \* |
| **Powell, OH 43065** | \* |
| | \* |
| *Defendants.* | \* |

_____

E-Commerce Trade, LLC and Bold Home Products, LLC, through undersigned counsel, for their complaint against CarbonKlean, LLC and Daniel J. Patton, allege as follows:

## PARTIES

1.      Bold Home Products, LLC ("Bold Home"), is a Tennessee limited liability company with its principal place of business at 2231 NW Broad Street, Murfreesboro, TN 37129. Bold Home's sole member is White Field Equities – Fund I, LLC, a Delaware limited

liability company. None of the members of White Field Equities – Fund I, LLC are citizens of Ohio.

2.      E-Commerce Trade, LLC ("ECT"), is a Nevada limited liability company with its principal place of business at 2231 NW Broad Street, Murfreesboro, TN 37129. ECT's sole member is Brian D. Sawyer, a resident and citizen of North Carolina.

3.      Defendant CarbonKlean, LLC ("CarbonKlean") is an Ohio limited liability company with its principal place of business at 24 Village Pointe Drive, Powell, OH 43065. Upon information and belief, CarbonKlean's sole member is Daniel J. Patton, a citizen of Ohio.

4.      Defendant Daniel J. Patton ("Patton") is President and CEO of CarbonKlean and, upon information and belief, CarbonKlean's sole member.  Patton is a citizen of Ohio.

## JURISDICTION AND VENUE

5.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the plaintiffs and their members and the defendant and its sole member, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      Personal jurisdiction is proper over CarbonKlean and Patton because they reside in and are citizens of Ohio and their actions that form the basis of the claims were taken in Ohio.

7.      Venue is proper in this Court pursuant to 18 U.S.C. §1391(b)(1), as CarbonKlean and Patton are residents of the Southern District of Ohio.  Alternatively, venue is proper pursuant to 18 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions that give rise to the claims occurred in this judicial district.

## FACTUAL BACKGROUND

8.      ECT is an intermediary in the e-commerce distribution of home and personal products. It has distribution relationships with numerous vendors, and customer relationships with many online merchants, retailers, and consumers. Amazon is one of its primary sales channels.

9.      Bold Home also does business as an e-commerce distributor, and has relationships in a number of sales channels, including Amazon.  Bold Home is an affiliate of ECT. During all times relevant to this dispute, ECT granted authority to Bold Home to sell products, including Peeps products, for ECT through its sales channels, including Amazon..

10.     ECT does business in its own name, as Trios Distribution, and through its affiliate Bold Home, as Bold Home Products.

11.     ECT, through Bold Home, sells products for approximately 50 vendors and suppliers through distribution networks with merchants established by ECT and Bold Home, including Amazon.

12.     CarbonKlean was a vendor to ECT for eyeglass and glass/screen cleaning products known as Peeps.

13.     ECT and CarbonKlean entered into an E-Commerce Trade Supplier Terms & Conditions ("Supplier Agreement") on or about August 16, 2016. A copy of the Supplier Agreement is attached as Exhibit A.

14.     The Supplier Agreement governs, among other things, ECT's purchase of products from CarbonKlean.

15. Under the Supplier Agreement, ECT would, on an ongoing and continuous basis, submit purchase orders to CarbonKlean for purchase of products; including purchases of Peeps. Once the purchase orders were accepted by CarbonKlean, the Peeps would be shipped directly from CarbonKlean's overseas manufacturer to ECT's warehouse in Tennessee and ECT would pay the purchase orders.

16. ECT informed CarbonKlean early on that Bold Home was a related company and would, as allowed by the Supplier Agreement, be working with ECT to sell the Product. See Supplier Agreement, introductory paragraph (ECT is purchasing for delivery to one or more of its merchants) and ¶ 19 (ECT may assign any of its rights without CarbonKlean's consent).

17. CarbonKlean was fully aware Bold Home was working with ECT to resell Peeps products purchased from CarbonKlean.

18. On March 6, 2017, CarbonKlean signed an Amazon Brand Registry Authorization ("Authorization") which gave Bold Home authority to manage CarbonKlean's Peeps brand on Amazon through Amazon's Brand Registry service. A copy of the Authorization is attached as Exhibit B.

19. The Authorization gave Bold Home greater access and control rights over detail page attributes for the Products as compared to other sellers, as well as improved ability to report counterfeit sellers. See Authorization, first bullet point. Notwithstanding Bold Home's appointment as the Brand Registry manager, ECT provided the Brand Registry access credentials to CarbonKlean's outside brand consultant Y Brand so it too could see, access and change anything that Bold Home could as brand manager.

20.     Also, in 2018 in response to Amazon marketplace sellers offering counterfeit Peeps product for sale, CarbonKlean itself informed Amazon that Bold Home was one of only a few sellers authorized to sell the Peeps product, as reflected in the letter attached as <u>Exhibit C</u>.

21.     ECT and Bold Home were ultimately responsible for establishing online and e-commerce distribution networks with Amazon and other online merchants for Peeps products.

22.     Prior to ECT and CarbonKlean executing the Supplier Agreement, Peeps had virtually no substantive online presence or reputation.  Indeed, prior to its relationship with ECT, CarbonKlean did not have any distribution relationships or established sales network with Amazon or any other major online retailer.  CarbonKlean terminated the Supplier Agreement on April 1, 2019, at which time ECT still had more than $738,000 in CarbonKlean Peeps in inventory.

23.     Notwithstanding termination of the Supplier Agreement, the parties entered into a Purchase Terms Amendment Agreement dated April 11, 2019 (the "Amendment Agreement"). A copy of the Amendment Agreement is attached as <u>Exhibit D</u>.

24.     The Amendment Agreement addressed the inventory of Peeps subject to specific purchase orders for which ECT owed $738,268.81 to CarbonKlean; the sale of this specific inventory (the "Product") is, in large part, the subject of the parties' present dispute.

25.     The Amendment Agreement allowed CarbonKlean, by May 1, 2019, to take back any of the Product, subject to a 10% restocking fee. CarbonKlean did not take any Product back.

26.     The Amendment Agreement provided ECT extended payment terms for payment of the Product. ECT has paid all sums due for the Product under the Amendment Agreement and thus owns the Product outright.

27.    The Amendment Agreement also "expressly and irrevocably authorizes [ECT] to assign, transfer, or grant authority to sell all CarbonKlean LLC products relating to [the Amendment Agreement], in accordance with the terms of any existing sales agreement by and among" CarbonKlean and ECT. See Amendment Agreement, last paragraph.

28.    ECT and Bold Home had been selling the Product on Amazon since it was purchased from CarbonKlean. The Product is authentic, in new condition, and is in the original packaging. As required by Amazon, ECT matched the Product to the proper existing Amazon Standard Identification Numbers ("ASINs"), or if they did not exist, created a new ASIN as it was allowed to do as CarbonKlean's then Brand Registry manager.

29.    Under the Supplier Agreement, ECT agreed to abide by CarbonKlean's pricing policies in effect at the time ECT purchased product. See Supplier Agreement, ¶ 3. The Minimum Advertised Price (MAP) and the Manufacturer Suggested Retail Price (MSRP) for the Products provided by CarbonKlean to ECT was $14.99 per unit. See 2016 Peeps Wholesale Pricing attached as Exhibit E.

30.    The pricing restrictions did not survive termination of the Supplier Agreement; nonetheless, ECT and Bold Home continued to abide by these prices in selling the Product (with the occasional temporary automated pricing adjustment in order to beat and discourage counterfeit sellers).

31.    ECT and Bold Home continued to sell and offer for sale the Product on Amazon until shortly after the final payment due under the Amendment Agreement was made to CarbonKlean.  Once CarbonKlean had the final payment, it embarked on a series of illegal actions resulting in the eventual termination of ECT and Bold Home's access to Amazon.

32. That is, notwithstanding that ECT owned the Products and had every right to sell them, on October 11, 2019, CarbonKlean filed an action in the United States District Court for the Southern District of Ohio, Case No.2:19-cv-04547-GCS-EPD (the "Ohio Action"), asserting, among other things, that ECT and Bold Home had breached the Supplier Agreement, had converted CarbonKlean's brand registry rights, and were selling the Products in violation of CarbonKlean's patent and trademark rights.

33. Upon learning of the complaint, but prior to its service, on October 25, 2019, ECT and Bold Home wrote CarbonKlean's counsel informing that:

    a. ECT was not selling the Products in breach of the Supplier Agreement or the Amendment Agreement because those agreements did not (other than price in the Supplier Agreement) state any limitations on when or how ECT could sell the Products once it owned them, and in fact the Amendment Agreement specifically "expressly and irrevocably authorizes" ECT to sell the Products.

    b. ECT was not selling the Products using CarbonKlean's trademarks without CarbonKlean's consent in violation of 15 U.S.C. § 1114 *et seq*.; section 1114 applies only to persons who, "without the consent of the registrant," sell trademarked product in commerce, and through the Amendment Agreement, CarbonKlean had so consented, "expressly and irrevocably authoriz[ing] [ECT] to assign, transfer, or grant authority to sell" the Products;

    c. Because it is undisputed that the Products are authentic and are what they purport to be, there is no question about product confusion such that a federal trademark (or patent) infringement claim can be sustained;

    d. CarbonKlean's trademark claim was barred by the first-sale doctrine, because once CarbonKlean sold the Products to ECT, ECT was free to sell them as it wished, and, since the Products are authentic and in the original packaging, any sale would not be trademark infringement;

    e. CarbonKlean had no patent infringement claim because 35 U.S.C. § 271 only applies to sales of patented goods "without authority," and in the Amendment Agreement, CarbonKlean expressly and irrevocably authorized ECT to sell the Products; and

7

f.   As with trademarks, the first-sale doctrine (in patent parlance referred to as the exhaustion of patent doctrine) protects ECT and Bold Home's sale of the Products.

34.   CarbonKlean did not respond to the October 25 letter; rather, on October 29, 2109, it voluntarily dismissed the Ohio Action.

35.   Yet, within the same time frame of the entirety of CarbonKlean's Ohio Action, CarbonKlean and its agents and/or Patton submitted formal complaints to Amazon under the guise that ECT and Bold Home were selling the Product in contravention of CarbonKlean's trademark rights. More specifically, CarbonKlean and/or Patton represented to Amazon that by offering the Products for sale on Amazon's e-commerce platform, ECT and Bold Home violated CarbonKlean's Trademark number: 5200100.  These statements by CarbonKlean and/or Patton were absolutely false.

36.   ECT and Bold Home first received notice from Amazon of the alleged Trademark violations by CarbonKlean on October 1, 2019.  Additional notices from Amazon, for new bogus Trademark violations feigned by CarbonKlean and/or Patton to Amazon, were received by ECT and Bold Home on October 24 and 25, 2019.

37.   In direct response to CarbonKlean's and/or Patton's false allegations, Amazon suspended ECT and Bold Home's ability to offer for sale on Amazon the Products.  Eventually, on November 1, 2020, ECT and/or Bold Home received notice from Amazon that their selling accounts were deactivated and all listings, including for the Products, were removed.

38.   The consequence of CarbonKlean's actions was ECT and Bold Home lost the ability to sell all of their products (not just the Products) through Amazon, which enjoys an online U.S. market share estimated at 52% of all business to customer e-commerce transactions.

Indeed, Amazon's share of 2019 global ecommerce sales is estimated at nearly 14% of all worldwide business to consumer transactions.  ECT and Bold Home historically made more than 80% of all of their on-line sales through Amazon.  Access to the Amazon e-commerce platform was the lifeblood for ECT and Bold Home; this is especially true for the Fourth Quarter of the year when sales are historically at their highest levels due to the holiday rush.

39.     All that was needed to allow ECT and Bold Home to again immediately sell on the Amazon platform was for CarbonKlean to retract its false allegations.  By letter dated November 1, 2019, ECT and Bold Home requested CarbonKlean retract the complaints submitted to Amazon. CarbonKlean refused to issue a retraction. Massive damages ensued for ECT and/or Bold Home.

40.     Amazon's deactivation of ECT's and Bold Home's Amazon accounts affects not only sales of the Products but the sale of all other product that ECT and Bold Home offered for sale on Amazon. Lost profit damages from not being able to sell the Products alone is in excess of $600,000.  Lost profits from not being able to sell additional products on Amazon is in excess of $1 million.

<u>**COUNT I**</u>
**Breach of Supplier Agreement by CarbonKlean**
**(Non-Solicitation of Merchants and Non-Circumvention Provisions)**

41.     Plaintiffs re-allege and incorporate by reference each of the allegations contained in the foregoing paragraphs as if fully set forth herein.

42.     The Supplier Agreement, including to the extent amended by the Amendment Agreement, is a binding and valid contract between ECT and CarbonKlean.

43.     ECT has fully performed its obligations under the Supplier Agreement.

44. The Supplier Agreement restricts CarbonKlean's right to sell in any online sales channel developed by ECT. Specifically, the agreement provides that during its term, "ECT may introduce CarbonKlean to various Merchants and work to incorporate [CarbonKlean's] products into Merchant's systems." <u>See</u> Supplier Agreement, ¶ 14.

45. In return, CarbonKlean agreed that, "unless this agreement is terminated by ECT, [CarbonKlean] will not circumvent ECT and deal directly with such Merchants, and further agrees that during the term and for a period of one (1) year thereafter, it will not, directly or indirectly, call on or solicit any ECT Merchant with whom [CarbonKlean] did business with through ECT during the term of this Agreement." <u>Id</u>. CarbonKlean acknowledged a breach of this provision would cause significant and irreparable harm to ECT, such that ECT would be entitled to injunctive relief, in addition to damages. <u>Id</u>.

46. ECT established the Amazon channel for sale of CarbonKlean's products, improved the channel over time, and through its affiliate, Bold Home, integrated a new service from Amazon to help better manage CarbonKlean's brands. This service, called "Amazon Brand Manager" allows, *inter alia*, for listing design improvements and easier reporting of inauthentic products. It took ECT working in tandem with and through its affiliate Bold Home several months to be accepted and enrolled in this Amazon process.

47. Additionally, ECT and Bold Home exclusively worked to establish novel transparency label protocols with Amazon on behalf of CarbonKlean, a system not previously followed, which provided greater authenticity protection for Peeps and the Products being sold through the Amazon platform.

48.     Notwithstanding that ECT developed the Amazon merchant channel, and worked to incorporate CarbonKlean's products into it, CarbonKlean, with the aid of Pharmapacks, LLC, is now directly selling products into the channel. In no uncertain terms, CarbonKlean used its false allegations to hijack the online presence and merchant relationship ECT and Bold Home established and built.  This is a breach of the Non-Solicitation and Non-Circumvention provision of Paragraph 14 of the Supplier Agreement.  That is, within one year of the termination of the agreement, CarbonKlean is directly or indirectly doing business with a merchant (Amazon) with whom CarbonKlean did business through ECT during the term of the Supplier Agreement.

49.     Further, the Supplier Agreement provides, "[i]n the event of any dispute arising from or relating to this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and costs." See Supplier Agreement, ¶ 24.

50.     As a direct and proximate result of CarbonKlean's wrongful actions, ECT is entitled to injunctive relief to stop CarbonKlean's wrongful conduct.  ECT has also been damaged in an amount to be determined at trial, including lost profits, but reasonably believed to be in excess of One Million and 00/100 Dollars ($1,000,000).  ECT is also entitled to an award of reasonable attorney fees, statutory interest, and expenses incurred in bringing this action.

### COUNT II
### Breach of Supplier Agreement by CarbonKlean
### (Copyright)

51.     Plaintiffs re-allege and incorporate by reference each of the allegations contained in the foregoing paragraphs as if fully set forth herein.

52.     CarbonKlean and ECT agreed in the Supplier Agreement that "All content, design, images and description submitted to merchants on your behalf are the intellectual

11

property of E-Commerce Trade and is subject to U.S. Copyright laws." See Supplier Agreement, ¶ 21.

53. CarbonKlean, with the aid of Pharmapacks, LLC, is now dealing directly with and selling products through certain e-commerce merchants introduced by ECT to CarbonKlean, including Amazon. And CarbonKlean is using ECT's content, designs, images and descriptions submitted to Amazon and other online merchants.

54. In other words, once CarbonKlean revoked ECT and Bold Home's access as the Peeps Brand Registry Manager, CarbonKlean was able to gain control of ECT's and Bold Home's intellectual property, including its copyrighted material, they used market and sell products on the Amazon and other online sales platforms. CarbonKlean is now using ECT's and Bold Home's stolen intellectual property to market itself and sell Peeps, as well as other products, online. This conduct is a breach of Paragraph 21 of the Supplier Agreement.

55. Further, the Supplier Agreement provides, "[i]n the event of any dispute arising from or relating to this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and costs." See Supplier Agreement, ¶ 24.

56. As a direct and proximate result of CarbonKlean's wrongful actions, ECT is entitled to injunctive relief to stop CarbonKlean's wrongful conduct. Furthermore, ECT has been damaged in an amount to be determined at trial, including lost profits, but reasonably believed to be in excess of Eight Hundred Thousand and 00/100 Dollars ($800,000). ECT is also entitled to an award of reasonable attorney fees, statutory interest, and expenses incurred in bringing this action.

<u>**COUNT III**</u>
**Breach of Supplier and Amendment Agreements by CarbonKlean**
**(Assignment Terms)**

57.     Plaintiffs re-allege and incorporate by reference each of the allegations contained in the foregoing paragraphs as if fully set forth herein.

58.     The Supplier and Amendment Agreements are binding and valid contracts between ECT and CarbonKlean.

59.     ECT has fully performed its obligations under both agreements.

60.     CarbonKlean and ECT agreed in the Supplier Agreement, under the provision titled "Assignment," that ECT was expressly authorized "at any time to assign or transfer any or all of its rights…under this Agreement without [CarbonKlean's] prior written consent to any affiliate…" <u>See</u> Supplier Agreement, ¶ 19.

61.     Similarly, CarbonKlean and ECT agreed in the Amendment Agreement that CarbonKlean "expressly and irrevocably authorizes [ECT] to assign, transfer, or grant authority to sell all CarbonKlean LLC products related to [the Amendment [A]greement]…"   <u>See</u> Amendment Agreement, final paragraph.

62.     As allowed without restriction per the Supplier and Amendment Agreements, ECT authorized Bold Home to sell CarbonKlean products, including the Products.  CarbonKlean knew of the relationship between ECT and Bold Home and assented, although its acquiescence was not required.

63.     CarbonKlean has breached both the Supplier and Amendment Agreements by, among other things, proclaiming to third-party e-commerce platforms that Bold Home does not have the right to sell the Products.

64. As a direct and proximate result of CarbonKlean's wrongful actions, ECT has been damaged in an amount to be determined at trial, but reasonably believed to be in excess of Eight Hundred Thousand and 00/100 Dollars ($800,000). ECT is also entitled to an award of reasonable attorney fees, statutory interest, and expenses incurred in bringing this action.

**COUNT IV**
**Violations by CarbonKlean of the Deceptive Trade Practices Act, O.R.C. §4165.01, *et seq*.**
**and Unfair Competition**

65. Plaintiffs re-allege and incorporate by reference each of the allegations contained in the foregoing paragraphs as if fully set forth herein.

66. The Deceptive Trade Practices Act provides, in pertinent part, that a person "engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person does any of the following….Disparages the goods, services, or business of another by false representation of fact." O.R.C. § 4165.02(A)(10).

67. CarbonKlean is a "person" under the DTPA. O.R.C. § 4165.01(D).

68. CarbonKlean now competes with ECT and Bold Home to sell identical products on Amazon and other online e-commerce platforms.

69. In the course of CarbonKlean's business, vocation, or occupation in competing with ECT and/or Bold Home, CarbonKlean has disparaged the Products of ECT and/or Bold Home by making false representations of fact concerning the Products.

70. ECT and/or Bold Home suffered harm as a result of CarbonKlean's conduct through, among other things, their inability to sell the Products on Amazon.

71. As a direct and proximate result of CarbonKlean's violations of .R.C. § 4165.01, *et seq*, ECT and Bold Home are entitled to injunctive relief, actual damages in an amount to be

14

determined at trial, but reasonably believed to be in excess of Two Million and 00/100 Dollars ($2,000,000), statutory interest, and attorney's fees and expenses incurred in bringing this action, pursuant to .R.C. § 4165.03.

**COUNT V**
**Violations by Daniel Patton of the Deceptive Trade Practices Act, O.R.C. §4165.01, *et seq*.**
**and Unfair Competition**

72. Plaintiffs re-allege and incorporate by reference each of the allegations contained in the foregoing paragraphs as if fully set forth herein.

73. Daniel Patton is a "person" under the DTPA. O.R.C. § 4165.01(D).

74. On information and belief, Mr. Patton, in his individual capacity and in the course of his business, vocation, or occupation, made the statements to Amazon described herein that disparaged the Products of ECT and/or Bold Home by making false representations of fact concerning the Products.

75. ECT and/or Bold Home suffered harm as a result of Mr. Patton's conduct through, among other things, their inability to sell the Products on Amazon.

76. As a direct and proximate result of Mr. Patton's violations of .R.C. § 4165.01, *et seq*, ECT and Bold Home are entitled to injunctive relief, actual damages in an amount to be determined at trial, but reasonably believed to be in excess of Two Million and 00/100 Dollars ($2,000,000), statutory interest, and attorney's fees and expenses incurred in bringing this action, pursuant to .R.C. § 4165.03.

**COUNT VI**
**Defamation By CarbonKlean**

77. Plaintiffs re-allege and incorporate by reference each of the allegations contained in the foregoing paragraphs as if fully set forth herein.

15

78.     The statements made by CarbonKlean to Amazon were false and defamatory, were about ECT and/or Bold Home, and were published without privilege.

79.     The statements were made negligently, recklessly, maliciously, intentionally, and/or with willful disregard as to whether the statements were true.

80.     The statements disparage the goods, services, and business of ECT and Bold Home, and tended to injure ECT and Bold Home's trade or occupation and are, therefore, defamatory *per* se, for which ECT and/or Bold Home need not prove special damages. Nonetheless, ECT and/or Bold Home have suffered damages in fact, including but not limited to the termination or disruption of their relationship with Amazon, lost profits, wasted prior business development, and loss of reputation.

81.     As a direct and proximate result of CarbonKlean's wrongful actions, ECT and Bold Home have been damaged in an amount to be determined at trial, but reasonably believed to be in excess of Two Million and 00/100 Dollars ($2,000,000). ECT and Bold Home are also entitled to an award of reasonable attorney fees, statutory interest, and expenses incurred in bringing this action.

## COUNT VII
### Defamation By Daniel Patton

82.     Plaintiffs re-allege and incorporate by reference each of the allegations contained in the foregoing paragraphs as if fully set forth herein.

83.     On information and belief, Mr. Patton made the statements to Amazon described herein.

84.     The statements made by Mr. Patton to Amazon were false and defamatory, were about ECT and/or Bold Home, and were published without privilege.

85. The statements were made negligently, recklessly, maliciously, intentionally, and/or with willful disregard as to whether the statements were true.

86. The statements disparage the goods, services, and business of ECT and Bold Home, and tended to injure ECT and Bold Home's trade or occupation and are, therefore, defamatory *per* se, for which ECT and/or Bold Home need not prove special damages. Nonetheless, ECT and/or Bold Home have suffered damages in fact, including but not limited to the termination or disruption of their relationship with Amazon, lost profits, wasted prior business development, and loss of reputation.

87. As a direct and proximate result of Mr. Patton's wrongful actions, ECT and Bold Home have been damaged in an amount to be determined at trial, but reasonably believed to be in excess of Two Million and 00/100 Dollars ($2,000,000). ECT and Bold Home are also entitled to an award of reasonable attorney fees, statutory interest, and expenses incurred in bringing this action.

## COUNT VIII
### Intentional Interference By CarbonKlean With Contract and Business Relationships

88. Plaintiffs re-allege and incorporate by reference each of the allegations contained in the foregoing paragraphs as if fully set forth herein.

89. Since at least 2016, ECT and Bold Home had contractual and/or business relationships with Amazon whereby, among other things, they were authorized to sell products on Amazon's e-commerce platform.

90. ECT and Bold Home's contractual and/or business relationships with Amazon included the ability to store product in an Amazon fulfillment center and then, when an order

was placed through the Amazon e-commerce platform, Amazon would pick, pack and ship the product to consumers.

91.     In furtherance of their contractual and business relationship with Amazon, ECT and Bold Home invested considerable resources, time and effort over many years to, among other things, ensure and develop positive customer reviews and ratings by those customers purchasing any products from ECT and/or Bold Home.

92.     Amazon lists products available for purchase in order of credible sellers. Having a positive online seller reputation is a crucial factor in Amazon's order of listing products for sale.

93.     A mature positive online seller reputation, particularly on the Amazon platform, takes years to develop and is frequently the competitive differentiator upon which consumers make buying decisions. More simply, all else being equal, when given a choice between buying a product from an e-commerce seller who enjoys a five star rating verses another seller rated four stars, online consumers overwhelmingly choose the higher rated seller.

94.     CarbonKlean had knowledge of ECT and/or Bold Home's contractual and/or business relationship with Amazon.

95.     CarbonKlean intentionally interfered with ECT and/or Bold Home's contractual and/or business relationship with Amazon through wrongful means, including but not limited to making false, misleading and defamatory complaints to Amazon leading to a termination and/or disruption of the relationship between ECT and/or Bold Home and Amazon.  The result of CarbonKlean's wrongful conduct is that ECT and Bold Home were terminated from listing for sale any products, not just products purchased from CarbonKlean, under their long held, well established, and favorable seller profiles.

96.     As a direct and proximate result of CarbonKlean's wrongful actions, ECT and Bold Home have been damaged in an amount to be determined at trial, but reasonably believed to be in excess of Two Million and 00/100 Dollars ($2,000,000).  ECT and Bold Home are also entitled to an award of reasonable attorney fees, statutory interest, and expenses incurred in bringing this action.

### COUNT IX
### Intentional Interference By CarbonKlean With Prospective Economic Advantage

97.     Plaintiffs re-allege and incorporate by reference each of the allegations contained in the foregoing paragraphs as if fully set forth herein.

98.     ECT and Bold Home had economic relationships with Amazon and customers shopping on Amazon, which relationships would have brought future economic benefit to ECT and Bold Home.

99.     CarbonKlean had knowledge of these relationships.

100.    CarbonKlean intentionally interfered with these relationships through wrongful means including, but not limited to, making false, misleading, and defamatory complaints to Amazon leading to a termination and/or disruption of these relationships.

101.    ECT and Bold Home's relationships with Amazon and customers shopping on Amazon have actually been disrupted.

102.    As a direct and proximate result of CarbonKlean's wrongful actions, ECT and Bold Home have been damaged in an amount to be determined at trial, but reasonably believed to be in excess of Two Million and 00/100 Dollars ($2,000,000).  ECT and Bold Home are also entitled to an award of reasonable attorney fees, statutory interest, and expenses incurred in bringing this action.

## COUNT X
**Injunction**

103.    Plaintiffs re-allege and incorporate by reference each of the allegations contained in the foregoing paragraphs as if fully set forth herein.

104.    Based on the foregoing facts, ECT is entitled to injunctive relief: it has a strong likelihood of success on the merits of its claims; it will suffer irreparable harm if the injunction is not issued; an injunction would not cause substantial harm to another; and the public interest would be served by issuing the injunction

105.    ECT requests injunctive relief as follows:

    a.    An injunction prohibiting CarbonKlean and its agents, servants, employees, and those persons in active concert or participation with them, whether alone or in any combination, from directly or indirectly doing business with a merchant with whom CarbonKlean did business through ECT, including Amazon, during the term of the Supplier Agreement, for one year following entry of the injunction;

    b.    An injunction prohibiting CarbonKlean and its agents, servants, employees, and those persons in active concert or participation with them, whether alone or in any combination, from directly or indirectly using content, designs, images and descriptions submitted to Amazon and any other merchant by ECT and/or Bold Home on CarbonKlean's behalf;

    c.    An injunction prohibiting CarbonKlean and its agents, servants, employees, and those persons in active concert or participation with them, whether alone or in any combination, from directly or indirectly stating or otherwise representing to any third party that ECT and/or Bold Home are not authorized to sell the Products, the Products are counterfeit or otherwise inauthentic, they Products are not in the original packaging, and/or the Products are not in new condition; and

    d.    An injunction prohibiting Daniel Patton and his agents, servants, employees, and those persons in active concert or participation with him, whether alone or in any combination, from directly or indirectly stating or otherwise representing that ECT and/or Bold Home are not authorized to sell the Products, the Products are counterfeit or otherwise inauthentic, they Products are not in the original packaging, and/or the Products are not in new condition.

WHEREFORE, plaintiffs Bold Home and ECT request the Court:

      A.    An award of damages, as more fully described above, greater than $75,000, but to be determined at trial;

      B.    An award of treble damages;

      C.    An award of attorneys' fees, costs, and expenses in this action as permitted under the Supplier and Amended Agreements and applicable law;

      D.    An award of prejudgment and post judgment interest; and

      E.    An award of all such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ Toby K. Henderson
Toby K. Henderson    (0071378)
Kaitlyn C. Meeks     (0098949)
SEBALY SHILLITO + DYER
A Legal Professional Association
1900 Stratacache Tower
40 North Main Street
Dayton, OH  45423
937/222-2500
937/222-6554 (fax)

And

Ben Powers       (033493)
(*pro hac vice* forthcoming)
Legal Powers, PLLC
1224-B Columbia Avenue, Suite 200
Franklin, Tennessee 37064
(p) (615) 762-8775
(f) (615) 435-3475
ben@legalpowers.com

*Counsel for Plaintiffs*

21

## **JURY TRIAL DEMAND**

Plaintiffs E-Commerce Trade, LLC and Bold Home Products, LLC, demand a trial by jury, pursuant to Federal Rule of Civil Procedure 38(b).

/s/ Toby K. Henderson
Toby K. Henderson

3462533.4