IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BOLD HOME PRODUCTS, LLC, *et al.*, | : |
| Plaintiffs, | : Case No. 2:20-cv-4020 |
| v. | : Chief Judge Algenon L. Marbley |
| CARBONKLEAN, LLC, *et al.*, | : Magistrate Judge Chelsey M. Vascura |
| Defendants. | : |

**OPINION & ORDER**

This matter comes before the Court on Defendants' partial Motion to Dismiss. (ECF No. 43). For the reasons set forth below, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

This case originates from a contract that Plaintiff E-Commerce Trade, LLC ("ECT") entered with Defendant CarbonKlean, LLC, on or about August 16, 2016. (ECF No. 1 ¶ 13). The contract, titled "E-Commerce Trade Supplier Terms & Conditions" (hereinafter, the "Supplier Agreement"), governed ECT's purchase of products from CarbonKlean. (*Id.* ¶¶ 13–14). Plaintiffs contend that CarbonKlean and its CEO, Defendant Daniel Patton, breached the Supplier Agreement, engaged in unfair and deceptive trade practices, and committed several torts.

Under the Supplier Agreement, ECT sold CarbonKlean's products on Amazon through its affiliated e-commerce distributor, Plaintiff Bold Home Products, LLC ("Bold Home"). (*Id.* ¶¶ 9–11, 16–17). This arrangement continued until April 1, 2019, when CarbonKlean terminated the contract. (*Id.* ¶ 22). At that time, ECT still had over $738,000 of unsold CarbonKlean inventory. (*Id.*). To address that inventory, ECT and CarbonKlean entered into a "Purchase Terms

1

Amendment Agreement" (hereinafter, the "Amendment Agreement") on April 11, 2019. (*Id.* ¶¶ 23–24). The Amendment Agreement specified terms for ECT's outstanding payments to CarbonKlean, created a product take-back option for CarbonKlean, and authorized ECT to assign its right to sell the remaining inventory. (*Id.* ¶¶ 25–27). ECT states that it made the required payments and that CarbonKlean declined to reclaim any products. (*Id.* ¶¶ 25–26).

After ECT made its final payment, Plaintiffs allege Defendants began filing formal complaints that Plaintiffs "had breached the Supplier Agreement, had converted CarbonKlean's brand registry rights, and were selling the Products in violation of CarbonKlean's patent and trademark rights." (*Id.* ¶¶ 31–32). One such complaint was filed in this Court on October 11, 2019, under the caption *CarbonKlean, LLC v. E-Commerce Trade, LLC*, No. 2:19-cv-4547. (ECF No. 1 ¶ 32). CarbonKlean voluntarily dismissed that case on October 29, 2019. (*Id.* ¶ 34). In addition to the court case, Defendants allegedly submitted false complaints to Amazon that Plaintiffs were selling CarbonKlean products in violation of their trademark. (*Id.* ¶¶ 35). These trademark complaints resulted in the deactivation of Plaintiffs' Amazon seller accounts and the removal of all their product listings, including for the CarbonKlean inventory. (*Id.* ¶ 37). Since Amazon accounted for more than 80% of Plaintiffs' online sales, the deactivation was costly to their business. (*Id.* ¶ 38). Plaintiffs allege lost profits of over $600,000 for the unsold CarbonKlean products and over $1 million for other additional products. (*Id.* ¶ 40).

Plaintiffs filed their Complaint against Defendants CarbonKlean and Patton on August 7, 2020, alleging ten counts. (ECF No. 1). Counts I, II, and III claim breach of contract by CarbonKlean; Counts IV and V claim violations of Ohio's Deceptive Trade Practices Act by CarbonKlean and Patton; Counts VI and VII claim defamation by CarbonKlean and Patton; Counts

2

VIII and IX claim intentional interference by CarbonKlean; and Count X seeks injunctive relief. (*Id.*). Only Counts IV and V are at issue in the present Motion.

On October 13, 2020, Defendants filed an answer to the Complaint, including eight counterclaims against ECT and Bold Home (ECF No. 8), which Defendants later amended (ECF Nos. 25, 27, 28). On August 4, 2021, Defendants filed the instant Motion to Dismiss, arguing that Plaintiffs' Ohio statutory claims (Counts IV and V) fail to state a claim under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 43). Plaintiffs filed a response on August 26, 2021. (ECF No. 44). No reply brief has been filed, leaving this matter ripe for adjudication.

## II. STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). When evaluating such a motion, "[a]ll factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). But the court "need not . . . accept unwarranted factual inferences." *Id.* Complaints must state "more than a bare assertion of legal conclusions to survive a motion to dismiss." *Horn v. Husqvarna Consumer Outdoor Prods. N.A., Inc.*, 2013 WL 693119, at *1 (S.D. Ohio Feb. 26, 2013) (citing *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993)). Rather, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The claim to relief must be "'plausible on its face,'" with "factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

When a party moves to dismiss under Rule 12(b)(6) *after* answering the complaint, the motion to dismiss is construed as a motion for judgment on the pleadings. *Esparza v. Pierre Foods*, 923 F. Supp. 2d 1099, 1102 (S.D. Ohio 2013) (citing Fed. R. Civ. P. 12(c)). Still, the Court employs the same legal standard as for a Rule 12(b)(6) motion. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987) ("Where the Rule 12(b)(6) defense is raised by a Rule 12(c) motion for judgment on the pleadings, we must apply the standard for a Rule 12(b)(6) motion"). The Court will grant judgment on the pleadings "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)). As with a Rule 12(b)(6) motion, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id*. at 581 (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)).

### III. LAW AND ANALYSIS

Defendants seek dismissal of Counts IV and V under Rule 12(b)(6) for failure to state a claim. (ECF No. 43). As a threshold matter, the Court will construe Defendants' Motion as one brought under Rule 12(c). Defendants answered the Complaint on October 13, 2020 (ECF No. 8), approximately ten months before they brought the instant Motion to Dismiss. Under these circumstances, it is proper to construe a motion to dismiss as a motion for judgment on the pleadings. *See Esparza*, 923 F. Supp. 2d at 1102. Although both motions are subject to the same

4

legal standard, judgment on the pleadings would, if granted, entitle Defendants to a judgment as a matter of law. *JPMorgan*, 510 F.3d at 581–82.

Defendants argue that Counts IV and V, which are raised under Ohio's Deceptive Trade Practices Act, conflict with a California choice of law provision in the Supplier Agreement, requiring their dismissal. (ECF No. 43 at 2, 4). Plaintiffs respond that the conduct alleged in Counts IV and V is outside of the scope of the Supplier Agreement and therefore is not subject to California law. (ECF No. 44 at 3–4). Plaintiffs further state that Defendant Patton was not a party to the contract and thus is not subject to its protections regardless. (*Id.* at 5).

First, the Court must consider whether the choice of law provision in the Supplier Agreement is enforceable here. Then, the Court may analyze whether it precludes the Complaint's Ohio-law claims against Defendants CarbonKlean and Patton.

### A. Choice of Law Provision

Defendants' Motion centers on a choice of law provision in the Supplier Agreement, stating: "All matters arising out of or relating to this Agreement are governed by and construed in accordance with the internal laws of the State of California without giving effect to any choice or conflict of law provision or rule." (ECF No. 1-1 ¶ 24).

The contractual choice of law provision is controlling as to matters within its scope. In Ohio, "subject to very limited exceptions, the law of the state chosen by the parties to a contract will govern their contractual rights and duties." *Ohayon v. Safeco Ins. Co. of Ill.*, 747 N.E.2d 206, 209 (Ohio 2001). "[T]he parties' choice-of-law provisions are enforceable unless [1] 'the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or [2] application of the law of the chosen state would be contrary to the fundamental policy of a state having a greater material interest in the issue than the chosen

state and such state would be the state of the applicable law in the absence of a choice by the parties.'" *Century Bus. Servs., Inc. v. Barton*, 967 N.E.2d 782, 793 (Ohio Ct. App. 2011) (quoting *Schulke Radio Prods., Ltd. v. Midwestern Broad. Co.*, 453 N.E.2d 683, 684 (Ohio 1983)). Neither party has contested the validity of the choice of law provision, and on the record presently before the Court, nothing would suggest that it falls within either exception.

Thus, the only remaining question is whether the California choice of law provision precludes Plaintiffs from bringing their Ohio statutory claims in Counts IV and V. The Court now turns to that issue.

### B. Claim against Defendant CarbonKlean (Count IV)

In Count IV, Plaintiffs allege CarbonKlean engaged in conduct violating Ohio's Deceptive Trade Practices Act. (ECF No. 1 ¶¶ 65–71). The Deceptive Trade Practices Act provides in pertinent part: "A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person . . . Disparages the goods, services, or business of another by false representation of fact." O.R.C. § 4165.02(A)(10). The alleged disparagement occurred in CarbonKlean's formal complaints to Amazon, asserting that ECT and Bold Home were selling products in violation of CarbonKlean's trademark rights. (ECF No. 44 at 4; No. 1 ¶¶ 35–37).

Importantly, those same complaints to Amazon form the basis of Plaintiffs' breach of contract claims in Counts I through III. Count I states that "CarbonKlean used its false allegations to hijack the online presence and merchant relationship ECT and Bold Home established and built," in violation of the Supplier Agreement's non-solicitation and non-circumvention provision. (*Id.* ¶ 48). Count II states that through the complaints, "CarbonKlean was able to gain control of ECT's and Bold Home's intellectual property, including its copyrighted material, they used [to]

6

market and sell products on the Amazon and other online sales platforms," in violation of the Supplier Agreement's copyright provision. (*Id.* ¶ 54). Count III states that "CarbonKlean has breached both the Supplier and Amendment Agreements by, among other things, proclaiming to third-party e-commerce platforms that Bold Home does not have the right to sell the Products," in violation the assignment terms. (*Id.* ¶ 63). It cannot be true that the disparaging statements to Amazon underlie three breach of contract claims and yet "*do not* relate to or arise from the Supplier Agreement." (ECF No. 44 at 4). The terms of the contract are at the heart of the dispute; they determine whether CarbonKlean's statements to Amazon were false representations of fact. This brings Count IV within the scope of the California choice of law provision, as the alleged conduct arises out of and relates to the Supplier Agreement. (ECF No. 1-1 ¶ 24).

Plaintiffs also attempt to preserve Count IV on the basis that the statements to Amazon occurred "months after the termination of the Supplier Agreement." (ECF No. 44 at 4). This argument is unavailing. The Supplier Agreement recognizes that termination would not mean a hard cutoff on all clauses, stating: "Provisions of this Agreement that by their nature should apply beyond their terms will remain in force after any termination or expiration of this Agreement." (ECF No. 1-1 ¶ 26). Insofar as the allegedly disparaging statements infringed on Plaintiffs' rights that vested during the term of the Supplier Agreement, the dispute arose under the contract, and its choice of law provision should continue to govern.

As such, Plaintiffs' claim against CarbonKlean for violation of the Ohio Deceptive Trade Practices Act is not viable. Defendants' Motion is **GRANTED** as to Count IV.

### C. Claim against Defendant Patton (Count V)

Count V also sounds under the Ohio Deceptive Trade Practices Act, but it differs from Count IV in that it concerns alleged statements made by Defendant Patton in his individual

7

capacity. (ECF No. 1 ¶¶ 72–76). Defendants move to dismiss on the same grounds as Count IV. (ECF No. 43 at 4). Plaintiffs raise an additional argument in opposition: that Defendant Patton cannot invoke a choice of law provision "in a contract to which he, by his own pleadings, has represented he is not a party to." (ECF No. 44 at 5).

Plaintiffs accurately characterize Defendant Patton's outside status in relation to the Supplier Agreement; he was neither a party to the contract nor an intended beneficiary. Defendant Patton did sign the contract, but he identified himself clearly as "President & CEO" of CarbonKlean, LLC. (ECF No. 1-1 at 5). Where signatories "specify their corporate title next to their name or otherwise show that they are signing on behalf of the corporation," they are deemed to act in a corporate, rather than personal, capacity. *DaimlerChrysler Servs. N. Am. LLC v. Labate Chrysler, Jeep, Dodge, Inc.*, 2006 WL 2943305, at *2 (N.D. Ohio Sept. 28, 2006) (citing *Cannon v. Miller Rubber Prods. Co.*, 190 N.E. 210, 211 (Ohio 1934)). This is the only reference to Defendant Patton in the Supplier Agreement, which belies any possible assertion that he was the intended beneficiary of the contract between CarbonKlean and ECT. Notably, the Complaint is consistent on these points, treating Defendant Patton as a non-party owing no contractual duties. The breach of contract claims (Counts I–III) refer only to CarbonKlean's conduct and make no reference to Defendant Patton's statements, which allegedly were made "in his individual capacity." (ECF No. 1 ¶ 74).

Defendant Patton's status is legally significant because, as a general rule, a non-party who is not an intended beneficiary has no right to enforce a contract. *See Tilahun v. Philip Morris Tobacco Co.*, 2005 WL 2850098, at *4 (S.D. Ohio Oct. 28, 2005) (citing *Berge v. Columbus Comm. Cable Access*, 736 N.E.2d 517, 532 (Ohio Ct. App. 1999)). Nor would he be bound by it. *Keehan Tenn. Inv., L.L.C. v. Praetorium Secured Fund I, L.P.*, 71 N.E.3d 325, 333 (Ohio Ct. App.

2016). Thus, Defendant Patton's third-party status under the Supplier Agreement differentiates his conduct from that of CarbonKlean, and it precludes him from invoking the California choice of law provision in his defense.

Since the choice of law provision is the sole argument raised, Defendants' Motion is **DENIED** as to Count V.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. Count IV is dismissed under the choice of law provision in the Supplier Agreement. Count V may proceed, along with the other counts not discussed herein.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: May 4, 2022**